Wickliffe, &c. *vs* Lee, &c., and Haydon's  CHANCERY.
heirs *vs* Lee, &c.

ERROR TO THE WASHINGTON CIRCUIT.                    *Case* 122.

*Rescission of Contracts.    Lapse of time.    Practice in*
*Chancery.*

JUDGE MARSHALL delivered the opinion of the Court.              *June* 26.

In October, 1817, Haydon sold to Lee 50 acres of land  The case stated.
in Washington county, claimed under Imleys patent
through Henry Banks, in consideration of which Lee exe-
cuted his note to Haydon for $400 payable in 1819, and
the possession which had been previously held by Hay-
don was delivered to Lee, by whom or his vendees it has
been held ever since.   In January 1818, Haydon assigned
Lee's note for a valuable consideration, to Joseph Barnett,
and in the same month Barnett assigned it to C. A. Wick-
liffe and C. Nourse under a compromise, in which they
undertook to sell so much of the title under the patent of
Benjamin Harrison, as covered the land of Barnett, of
which he was then and had long been in possession.

In 1819, Lee filed his bill to injoin the judgment  Lee's bill.
which had been obtained on the note by Wickliffe and
Nourse, alledging tha tHaydon claimed through Banks,
that there was a contest for the land between Banks and
Imley's heirs in the General Court; and that he believed
Imley's heirs would succeed, as Banks claimed under a
deed or pretended deed from Imley by his agent, and that
the power of attorney was lost and could not be found or
proved, and was denied by the heirs.   It is also suggested
that Banks had parted with his title; and without indi-
cating any other defect, Haydon is called on to produce
his title.

Haydon among other things alledges by way of answer  Haydon's an-
and cross bill that Banks had a valid title, and had given  swer, also Bar-
Lee his bond for the land in consequence of the pur-  nett, Wickliffe
chase aforesaid.   Which last allegation is not direct-  and Nourse's
ly denied.   Barnett and Wickliffe and Nourse answer-  answer and cross bill.

ed requiring proof of the complainants case, and pray for a decree against their respective assignors, in case the injunction should be perpetuated. And Barnett admits that he assigned the note to Wickliffe and Nourse for a valuable consideration and in good faith.

Decree of the Circuit Court and its reversal.
In this state of the pleadings, and without any evidence having been taken, the cause was heard in 1822, and the injunction dissolved, and the bill dismissed as to Wickliffe and Nourse, but retained as between the other parties. For this partial disposition of the case, the decree was in 1825 reversed and the cause remanded. After the return of the cause additional pleadings were filed between Haydon and Lee, in which Haydon exhibits a decree of the General Court in favor of Banks against Imley's heirs, and a conveyance by commissioner in that Court of an undivided moity of 5000 acres understood to cover the land in contest, also a deed from Banks to Haydon for the 50 acres sold to Lee dated in November 1827, and a deed from Haydon to Lee for the same. And the suit having been revived against Haydon's representatives they alledge that Lee had in May 1826, caused Banks to convey the land in controversy to one Dyer Shields, which Lee in answer avers to have been done by fraud or mistake and without his procurement, the said Shields having purchased from him adjoining lands for which he held the bond of Banks, and which were alone intended to be conveyed.

Answer and cross bill of Bennett's representatives vs Wickliffe and Nourse; they answer, make it a cross bill vs B. Harrison of Va. His answer thereto.
In the mean time Barnett's representatives against whom the suit had also been revived, filed their answer and cross bill, in which they question the nature of the interest or claim of Wickliffe and Nourse under Harrison's patent, call for an exhibition of their title, and pray for a rescission of the contract in which the note was assigned by their ancestor, unless Wickliffe and Nourse exhibit title under Harrison's patent. Wickliffe and Nourse exhibit the patent to Harrison, which grants to him in his own right, and in trust for James Nourse, Stephen Thompson Mason and the legal representatives of William Drew, 3996 acres. They alledge that this was one of many tracts held in partnership by these parties, and that on a division this tract was allotted to Charles Nouse, the

heir of James Nourse mentioned in the patent, and to Drew whose interest Wickliffe had acquired, but that the legal title remained in Benjamin Harrison of Virginia, the heir of the patentee whom they make a defendant; and his answer was immediately filed, without oath, admitting his obligation to convey to Wickliffe and Nourse. Upon these pleadings with proof conducing to show the length of Barnett's possession, before his compromise with Wickliffe and Nourse, but as to which there is no allegation, the cause was again heard in 1832, when the injunction was perpetuated, the contract between Lee and Haydon rescinded, and the possession ordered to be restored with an account of rents, &c. And the Court being of the opinion that Wickliffe and Nourse had not such title as Barnett's heirs were bound to accept, rescinded the contract in which the the note had been assigned, and decreed the amount of the note in favor of Barnett's representatives against those of Haydon. In April 1836, this second decree was reversed in all the particulars above stated, for the want of proper parties. Lee omitted to make Dyer Shields a party, to whom by his act or negligence the title of Banks which was the subject of his contract with Haydon, had been conveyed; Barnett's representatives had omitted to make Lee a party, and Wickliffe and Nourse having omitted to make the persons interested in the patent of Harrison defendants, the decree dismissing their cross bill against Harrison without prejudice, was affirmed. On the return of the cause to the Circuit Court, the pleadings were so amended as to make the necessary parties. The principle questions arising on these subsequent proceedings, relate the to controversy between Wickliffe and Nourse and the representatives of Barnett, which will be hereafter noticed. In 1843, the cause was heard a third time, and a decree was rendered substantially the same as above stated with, the addition that Dyer Shields was decreed to convey the 50 acres of land to Haydon's heirs.

We shall first consider the propriety of rescinding the contract between Lee and Haydon; and in taking up this branch of the case, we are met at once by the fact that while the only ground of rescission is the alledged want

WICKLIFFE, &c.
vs
LEE, &c.

Second decree of the Circuit Court.

Reversal of the second decree by this Court.

of title in Banks, the undisturbed possession of the land had been held by Lee under this contract, and under the title of Banks for more than twenty five years, and that it had been held also under the title of Banks for some indefinite period before the sale to Lee.   So that it may be assumed, that at the present time there has been a continued possession under Banks of more than thirty years, and there must have been nearly or quite thirty years possession at the date of the decree.   Then it is admitted by Lee that Banks had a deed made by a proper agent of the patentee, and which conveyed his title if the agent had power ; and a decree and commissioner's deed are produced from the General Court, importing a transfer of the title to Banks in a suit brought, as he says, to remedy the loss of the power of attorney ; and although these documents, being unaccompanied with proper evidence of actual or constructive service of process, furnished in themselves no evidence of title, and might properly have been disregarded at the first or second hearing of the cause, yet when corroborated as they were at the date of the last decree by long corresponding possession, they are themselves entitled to consideration as evidencing the rights of the parties, and as corroborating the inference arising from lapse of time.   The same would be the case if there were no decree shown.   These considerations taken in connection with the contract of Lee with Banks for adjoining land, the conveyance from Banks to Shields including the land in contest, and other facts implying a concession of title in him, and the fact that no opposing claimant has yet appeared, constitute in our opinion such a mass of evidence in favor of the conclusion that Banks had the title, as should have prohibited the rescission of a contract, of which Lee had so long enjoyed the benefit, and which was in fact fully executed on the part of Haydon, by the deed of Banks to Shields procured or permitted by Lee to be made, and by the subsequent deed of Haydon with general warranty as required by the contract.

It is true that when Lee filed his bill, and even at the second hearing, the evidences of title in Banks may not have been sufficient to authorize a coercive execution of the contract against the will of Lee.   But lapse of time

Lapse of time
during the pen-
dency of a suit
for the rescission

during the pendency of the suit, has perfected these evidences and matured the title. And a title which, by the termination of the suit has been thus perfected, should be deemed equally available as if it had then become perfect by intermediate conveyances. The law favors a continuance and not a change of that state of things which individuals have established by their own agreements. It leans to the upholding rather than to the destruction of contracts; and as in this case there was no fraud on the part of Haydon, but both parties evidently regarded the title as being in Banks at the date of the contract, we are of opinion that although Lee had good grounds for coming into equity, yet as time has supplied the deficiencies then appearing in the title, and as he has enjoyed and is secure in the enjoyment of all that he purchased, and that too by means of the title which he purchased, there is no proper ground for rescinding the contract, but the equity of the case has been fully satisfied by having suspended its execution against him until his safety is fully ascertained. His injunction against the judgment should, therefore, have been dissolved without damages, and the conveyance from Shields should have been decreed to him instead of Haydon's heirs.

The next question is, whether the benefit of the note and judgment should be decreed to the representatives of Barnett, or retained by Wickliffe and Nourse, and this brings up the propriety of rescinding the contract of assignment. No written evidence of the undertaking of Wickliffe and Nourse, with regard to the transfer of title being produced, its terms are only to be deduced from the cross bill of Barnett's representatives against them, and the statements of their answer. From these it is to be inferred that Wickliffe and Nourse, setting up some claim under the patent of Harrison, it was agreed by way of compromise, and to prevent litigation, that they should release to Barnett the title under that patent, so far as it covered his claim, of which he was in possession, in consideration of which the note of Lee to Haydon, then held by Barnett, was assigned to them. Barnett, as already shown, admitted in the answer filed by himself, that the note was assigned by him for a valuable consid-

of contract by vendee, should be considered as giving strength to the title offered by vendor, and a title thus perfected should be deemed equally good with one made perfect by conveyances; the law leans to the upholding rather than the destruction of contracts

WICKLIFFE; &c.
vs
LEE, &c.

eration, and in good faith; and it is certain that his possession has remained undisturbed by any claim under Harrison's patent, from the date of the contract, which was at least as early as January 1818, until the present time. If this quiet has been the consequence of his purchase from W. and N. or may be fairly attributed to it, he has already received every substantial advantage which he expected to derive from the contract. The parties cannot, by a rescission of the contract, be placed in *statu quo*. The claim under Harrison's patent is probably now barred. Even if it were assumed that the possession, since the date of the contract, could not be relied on as adverse to the title then agreed to be conveyed, *still the great lapse of time has subjected the holders of that title to the loss of evidence necessary to establish it*, or to rebut the proof as to the duration or extent of the possession existing before the date of the contract. It was a compromise to prevent litigation under the elder patent against the party in possession, and this party has, in fact, remained undisturbed for more than twenty five, now more than twenty eight years, since the compromise. It would not have been necessary for Wickliffe and Nourse to show that there was no such possession as would have defeated a recovery of any part of the land under the elder patent, even if such possession had been relied on in the pleadings. The fact itself, if alledged and fully proved, could not defeat the compromise, since Barnett himself must have been better apprised of the fact than Wickliffe and Nourse; much less could the proof of the fact, without any allegation to put it in issue; be available for the destruction of the compromise; and if it could be, the proof now exhibited showing the early commencement of the possession, without showing its position and extent with reference to the adverse patent, would be wholly insufficient. The compromise was a fair one if Wickliffe and Nourse could control the claim under Harrison's patent, and had such interest in it as authorized their engagement to release it; and if the compromise was fair in this respect, the contract should certainly not have been rescinded, if at the hearing of

the cause they were either prepared to release the title or to procure its release by those who held it.

It is sufficiently apparent in the record, that the tract covered by the patent now in question, was but one of many which had been granted for the benefit of the four persons mentioned in this patent; and it may be assumed that the title to this tract of land would have been less than in any fair division, would have fallen to the share of either of the four persons mentioned in the patent, as *prima facie*, each was entitled to an interest of one fourth. Then Nourse, who was associated with Wickliffe in the compromise with Barnett, is admitted to have been the sole heir of Nourse mentioned in the patent, and there is a paper in the record, the authenticity of which is unquestioned, bearing date before this compromise, evidencing a purchase by Wickliffe and his brother, of the interest of Carey Drew, who is admitted to be the sole heir of Drew mentioned in the patent. Wickliffe had, also, a power of attorney from Drew, dated in 1816, authorizing him to sell and convey his interest in this and other lands, and a general power from John C. Short, claiming as the assignee of Wm. H. Harrison, authorizing the sale and conveyance, and compromise of his interest; and he received, in 1819, from B. Harrison, heir of the patentee, a power in which the grantor, acknowledging the interest of Mason, Drew and Nourse, in this and other lands held in partnership with the patentee, and acknowledging the transfer of the patentees interest to Wm. H. Harrison, authorized Wickliffe to convey all these lands according to the interests of the parties, or their representatives, under the partnership. It appears, moreover, that a suit had been commenced in the old District Court, at Bardstown, by S. T. Mason, named in the patent, in which a division had been reported by Commissioners, allotting the tract of land now in question, as well as others, to Nourse and Drew. In 1805, a bill reviving this suit was filed in the Nelson Circuit Court, by the executors, claiming to be also trustees of S. T. Mason, in which they set up the former proceedings and pray for a division according to the report therein; and a decree was rendered in pursuance of this prayer, before

the date of the compromise with Barnett. It is clear, therefore, that Wickliffe and Nourse had such interest in the patent for this land, as authorized them to set up and litigate it, and that they might fairly have undertaken to dispose of the title in faith of the proceedings which have been mentioned; and although those proceedings may not have been absolutely authoritative on account of irregularity, still it is apparent that this tract was much less than the proportion to which Nourse alone was entitled in the whole concern, and their disposition of the title to it could not have been disregarded in any subsequent division.    There is no ground for imputing to Wickliffe and Nourse any fraud or concealment in their negociations with Barnett, nor for supposing that he was not truly informed of the nature of their interest and of the condition of the title.    He did not complain during his life, that he was getting nothing.    As already intimated, the great advantage to be gained on his part, has been substantially realized by preventing a litigation with Harrison's patent, which Wickliffe and Nourse might undoubtedly have set on foot.    It certainly has not been shown that this advantage was not worth the small consideration which he agreed to give.    And as Wickliffe and Nourse are equitably entitled to one half of the patent, even without partition, we should hesitate to rescind the contract even if they were not prepared to convey the shadow of legal title, which may subsist under Harrison's patent.

But in the first place, Wickliffe's power of attorney from the heir of the patentee, and from Drew and Short, would authorize him to convey to Nourse, and in conjunction with him, to convey to Barnett's heirs, title enough to cover the interference of Barnett; and we do not see that to this extent, it could be overreached by the equities of any of the other parties, even if they were not to be affected by the suit for partition.    And in the second place, it appears that in 1834, a bill was filed by the heirs of S. T. Mason, claiming by descent, which, there being no proof of alienation by their ancestor, must be deemed the real title, and praying to carry into effect the original partition, and to have the benefit of the decree

which had been made thereon.   In this bill, Wickliffe
was counsel for the complainants and B. Harrison, the holder of the legal title, and Wm. H. Harrison, John C. Short, Nourse, Drew and Wickliffe were made defendants.   The bill alledged the condition of the title as before stated, and prayed for conveyances to be made. Answers were put in for each of the defendants, concurring in the statements and prayer of the bill, and a decree was rendered in 1834, and conveyances made in pursuance thereof, by a Commissioner, and approved by the Court.   The decree and conveyances adopted the original partition, recognized Wickliffe's right to the interest of Drew, and if effectual, vested in Wickliffe and Nourse the title of all of the parties in the entire tract now in question, and thus enabled them to comply technically, as they might before have done substantially, with their engagement to Barnett.

It is objected that this decree was rendered without service of process, and that the answers which appear to have been filed without oath, were all put in by Wickliffe. But we have found no intimation of this last fact in the record of either of the suits.   The record states that the defendants, naming them, produced their answers.   There is no imputation of fraud ; and the decree must be regarded as valid and effectual, until the contrary is shown. Nor are we prepared to admit that its character or validity, so far, at any rate as the present question is concerned, would be affected by the assumption of the fact suggested with regard to the filing of the answers.   The object of the suit was merely to vest in the several parties according to their respective interests, the legal title which was confessedly held in trust for them.   Those interests were defined by the original petition in which all had acquiesced for thirty years.   There was no dispute among the parties ; and as Wickliffe had power over the entire title held in trust for all, it might well be supposed that he would be entrusted by all with the management of such proceeding as might be necessary for investing it in all, according to their rights.   He in fact exhibits an instrument investing him with Drew's equity, which was proved and is not questioned, and also shows powers of attor-

The assignment of a note sold for a release of a conflicting title, when the possession had been enjoyed under the compromise for a great length of time, refused to be cancelled; no fraud appear in the compromise.

WICKLIFFE, &c.,
vs
LEE, &c.

ney from each of the defendants, except Nourse who may be presumed to have co-operated with him in person, and William H. Harrison whose interest was doubtless held by John C. Short. Under these circumstances the gratuitous presumption, (if it were to be indulged) that the answers had been filed by Wickliffe, would not *ipso facto* invalidate the decree which is unimpugned by any allegation, and upon the face of the record stands fair and unimpugnable.

**The Chancellor may after a decree for a conveyance, cause conveyances to be made, though at a distant period afterwards.**

It is suggested that the commissioner's deed to Wickliffe under this decree, does not convey to him the tract of land now in question. It is true that the deed first made to Wickliffe under the decree of 1834, did not specify the moity of the tract now in question. But if, notwithstanding its reference to the decree and report, by both of which the lots No. 3 and 4, which include this moity, are allotted to Wickliffe, it should not be deemed sufficient to pass the title thereto, still as the decree established Wickliffe's right to it and directed it to be conveyed to him, it was competent for the Court afterwards to cause the decree to be fully executed in this respect. And this appears to have been done under an order of May 1841, made on motion of the complainants in the suit for partition. The deed made under that order and approved by the Court, conveys the tract specifically as directed by the decree and was filed in the present suit before the hearing.

The cross bill of Wickliffe and Nourse against the other parties interested in the Harrison patent, as amended in 1836, referred to the decree and conveyances as then made in the suit for partition, and prayed that if said conveyances were defective, the defendants might convey according to the decree. But as the defect, if any, was fully supplied by conveyences under the order of May 1841, and as this Cross bill does not seem to have been disposed of by the decree, this opinion need not be protracted by stating the proceedings on it.

**Mandate.**

We are of opinion that Wickliffe and Nourse have shown themselves able to *comply with their contract*, that Barnett's heirs should recieve their release of title, under the patent to Benjamin Harrison, and that Wick-

liffe and Nourse are entitled to the benefit of their judgment against Lee.

Wherefore, the entire decree is reversed, and the cause is remanded, with directions to dissolve the injunction granted to Lee, and to dismiss his bill so far as relates to that subject, giving him his costs; but to decree the defendant, Shields, to convey to him the fifty acres of land sold by Haydon, without costs, and with directions also, to decree a release of title from Wickliffe and Nourse to Barnett's heirs, to the extent of the interferance between the Harrison patent and the claim of Barnett, as it existed in January, 1818, and to dismiss the various cross bills as against other parties, at the cost of the complainants therein, but as between Barnett's heirs and Wickliffe and Nourse, each party should pay their own costs.

*C. A. Wickliffe* for plaintiffs: *McHenry* for defendants.